**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MARIO ALDO SAUCEDA,

       Movant/Defendant,

v.                                                    CV 11-1052 JC/WPL
                                                       CR 10-0606 JC

UNITED STATES OF AMERICA,

       Respondent/Plaintiff.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Pursuant to a plea agreement, Mario Aldo Sauceda pled guilty to conspiracy to possess with intent to distribute less than five grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(c), and 846. (Doc. 40[1] at 2.) The plea agreement included a waiver of his right to appeal his conviction and sentence. (*Id.* at 6.) He was sentenced to 188 months of imprisonment. (Doc. 49 at 2.) Sauceda filed a direct appeal to the Tenth Circuit Court of Appeals, the United States filed a motion to enforce the appellate waiver, and the Tenth Circuit granted the motion and dismissed the appeal. (Doc. 62 Ex. 1.)

The matter is before me now on Sauceda's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 65) and the United States's response thereto (Doc. 70). The case has been referred to me to make factual findings and recommend an ultimate decision of the case pursuant to 28 U.S.C. § 636(b). (Doc. 67.) In his motion, Sauceda asserts that his sentence must be set aside or corrected due to ineffective assistance of counsel at the plea negotiation, change of plea, and sentencing phases. (Doc. 65 at 4-6.) For the

---

[1] All document number references are to CR 10-606 JC.

reasons that follow, I find that an evidentiary hearing is not warranted and recommend that the motion be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2009, Sauceda was a passenger in Angela Mendoza's vehicle when they were stopped by police in Chaves County, New Mexico. (*See* Doc. 40 at 4.) Upon searching the vehicle, officers found methamphetamine. (*Id.*) As a result of this event, the United States filed charges against Sauceda in the United States District Court for the District of New Mexico. (Doc. 1.) Sauceda's family retained attorney Thomas Lawrence Wright to represent him in the ensuing criminal proceedings. (Doc. 70 Ex. 3.) On March 10, 2010, Sauceda signed a plea agreement with the Government pleading guilty to a violation of 21 U.S.C. § 846. (Doc. 40.) In the agreement and at the change of plea hearing before United States Magistrate Judge Lourdes A. Martinez, Sauceda admitted that he was responsible for 2.22 grams of pure methamphetamine that was found in Mendoza's vehicle. (Doc 40 at 4; Doc. 70 Ex. 1 at 17, 19-20.) He further admitted that he knowingly and voluntarily agreed and conspired with Mendoza to purchase and distribute the methamphetamine. (Doc 40 at 4; Doc. 70 Ex. 1 at 20.)

The Government declined to agree to a specific sentence under FED. R. CRIM. P. 11(c)(1)(B) or (C), but, in the plea agreement, the parties stipulated to sentencing adjustments in accordance with the Sentencing Guidelines. (Doc. 40 at 2-3, 5-6.) Specifically, the parties stipulated to a two level reduction to the base offense level for acceptance of responsibility pursuant to U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(a) (2009), one additional level reduction if Sauceda met the requirements of U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(b) (2009), and a three level role reduction for being a minor/minimal participant in the offense pursuant to U.S. SENTENCING GUIDELINES MANUAL § 3B1.2 (2009). (Doc. 40 at 5.) The parties acknowledged that these

stipulations were not binding on the sentencing court and that the sentencing would proceed at the discretion of the sentencing judge. (*Id.* at 5-6.) Sauceda agreed not to seek any downward departure or variance from the applicable offense level or criminal history category as determined by the court, and he waived his right to appeal the conviction and the sentence imposed except on the issue of ineffective assistance of counsel. (*Id.* at 3, 6.)

During the plea hearing, Judge Martinez explained that a notice charging a prior drug conviction pursuant to 21 U.S.C. § 851 had been filed the morning of the change of plea hearing. (Doc. 70 Ex. 1 at 10.) Mr. Wright showed Sauceda the § 851 enhancement and advised the Court, "I've explained it to him, your Honor, and he does understand it." (*Id.* at 11.) Sauceda confirmed that he knew what the notice does. (*Id.*) The prior conviction enhanced the maximum term of imprisonment from twenty to thirty years; the enhanced penalties were stated by the Government, and Sauceda confirmed again that he understood. (*Id.* at 11-12.)

Throughout the hearing, Judge Martinez extensively questioned Sauceda about his understanding of the plea documents. He stated that he read the documents, discussed them with his attorney, and signed them voluntarily. (*Id.* at 9.) Twice more throughout the hearing, he confirmed that his plea was voluntary, knowing and based solely on the agreement. (*Id.* at 14, 16.) Sauceda repeatedly acknowledged understanding that the stipulations in the plea agreement were not binding on the court and that the sentence to be imposed was entirely in the discretion of the sentencing judge. (*Id.* at 15, 17-18.) Judge Martinez also discussed the appeal waiver contained in the plea agreement with Sauceda, and he confirmed his understanding that he would not be able to appeal the rejection of the agreement or the ultimate sentence. (*Id.* at 18-19.)

A Pre-Sentence Investigation Report ("PSR") was completed prior to Sauceda's sentencing hearing, which described Sauceda's history and the circumstances of the current offense and

calculated an advisory term of imprisonment based on the Sentencing Guidelines. (Doc. 72.) In relevant part, the PSR computed Sauceda's total offense level under the Guidelines as thirty-one. (*Id.* at 8.) To reach that number, the PSR found that the base offense level was twenty and then subtracted three points based on the stipulated role adjustment. (*Id.* at 6-7.) However, Sauceda's prior state convictions rendered him a career offender and substantially enhanced his offense level. (*Id.* at 8-10.) Under the career offender provision, because the maximum term of imprisonment for the offense was thirty years, Sauceda's adjusted offense level rose to thirty-four. (*Id.* at 8.) The role adjustment is not available to career criminals, but Sauceda remained eligible for an adjustment of three levels based on acceptance of responsibility. (*Id.*) Thus, considering the total offense level of thirty-one and his criminal history category, the advisory imprisonment range was 188 to 235 months. (*Id.* at 19-20.)

     Despite Sauceda's agreement in his plea paperwork to not file for a downward departure, his attorney did file a motion for a downward variance of three levels after receiving the PSR. (Doc. 44.) The request was based on the stipulated role adjustment that was not available under the Guidelines because of Sauceda's status as a career offender. *See* U.S. SENTENCING GUIDELINES MANUAL § 4B1.1 (2009). The government agreed that the three level adjustment was appropriate. (Doc. 70 Ex. 2 at 2.) Mr. Wright brought the motion to the attention of Senior United States District Judge John E. Conway during the sentencing hearing, which was held on October 12, 2010. (*Id.* at 1-2.) Mr. Wright also argued for a sentence at the bottom of the guideline range after the variance, relying on conversations with Sauceda's relatives. (*Id.* at 3.) Judge Conway accepted the plea agreement, denied the variance, and sentenced Sauceda at the low end of the range calculated by the PSR, which was 188 months. (*Id.* at 4, 6.)

**LEGAL STANDARDS**

A petition under 28 U.S.C. § 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996) (citation omitted). Under § 2255, a federal prisoner "may move the court which imposed the sentence to vacate, set aside or correct the sentence" if "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255. Sauceda asserts that his sentence must be set aside or corrected because he received ineffective assistance of counsel due to Mr. Wright's failure to object on several grounds at the plea negotiation, change of plea, and sentencing phases. (Doc. 65 at 4-6.)

Criminal defendants possess a constitutional right to the assistance of counsel in their defense. U.S. CONST. amend. VI; *see also United States v. Washington*, 619 F.3d 1252, 1256 (10th Cir. 2010). This right attaches at all critical stages in a criminal prosecution, from pretrial interrogations about the charge through the sentencing process. *Kansas v. Ventris*, 556 U.S. 586, ---, 129 S. Ct. 1841, 1845 (2010); *Washington*, 619 F.3d at 1258; *Williams v. Jones*, 571 F.3d 1086, 1091 (10th Cir. 2009). If a defendant is convicted, post-conviction relief may be available when counsel's assistance was constitutionally deficient. A successful claim of ineffective assistance of counsel requires the defendant to satisfy two prongs: deficient performance by counsel and resulting prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). A court may address performance and prejudice in any order, and failure to state a claim under either part of the test is dispositive. *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (citations omitted).

To show deficient performance, Sauceda must demonstrate that Mr. Wright's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. This requires a showing that the performance is "completely unreasonable, not simply wrong." *Fox v. Ward*, 200

F.3d 1286, 1295 (10th Cir. 2000) (citing *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997)). Judicial scrutiny of counsel's performance is highly deferential, and courts apply a strong presumption that the attorney acted within the range of "reasonableness." *Harrington v. Richter*, 131 S. Ct. 770, 778 (2011); *Strickland,* 466 U.S. at 689.

At the prejudice prong, Sauceda must show that there is a reasonable probability that, but for Mr. Wright's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. In the context of a guilty plea, the prejudice prong requires Sauceda to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). As far as prejudice at the sentencing proceeding, Sauceda must show that "there is a reasonable probability that but for . . . [counsel's] deficient performance, he would likely have received a lower sentence." *Washington*, 619 F.3d at 1262. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Hill*, 474 U.S. at 59.

## ANALYSIS

### I. Plea Bargaining and Plea Hearing

Sauceda alleges that Mr. Wright's assistance was constitutionally defective and prejudicial at the plea negotiation stage because he failed "to protect defendant's best interest," resulting in a harsh sentence. (Doc. 1 at 16.) He seems to assert that Mr. Wright's plea negotiations were ineffective because the agreement was broad, failed to secure a specific sentence, and relinquished many of Sauceda's constitutional rights. (*Id.* at 16-17.) He alleges that Mr. Wright's assistance was ineffective and prejudicial at the change of plea hearing because he did not object to the § 851 enhancement, which he claims resulted in the loss of a three point reduction for his minor role in the

offense.[2] (*Id.* at 15.)

Sauceda fails to allege the necessary prerequisites to support a finding of prejudice. He does not allege that he would have insisted on exercising his right to trial but for Mr. Wright's deficient performance, nor would any facts in the record support such a claim. Therefore, he cannot satisfy the prejudice prong to demonstrate ineffective assistance of counsel at the plea negotiation and change of plea phases. *See Hill*, 474 U.S. at 59. An ineffective assistance of counsel claim cannot be maintained solely on a defendant's belief that he could have received a better bargain.

Accordingly, I conclude that Sauceda has failed to demonstrate that he was prejudiced by Mr. Wright's performance during plea negotiation and at the change of plea hearing. No evidentiary hearing is warranted, and I recommend denying relief on these claims.

## II.     Sentencing Phase

Sauceda asserts that he received ineffective assistance of counsel at the sentencing phase because his counsel failed to alert the Court to the correct range of imprisonment under the Guidelines. (Doc. 1 at 14.) According to him, his base offense level after the stipulated reductions was fourteen and was increased by eight levels pursuant to the career offender statute, leading to a guideline sentencing range of 84 to 105 months. (*Id.*) He also contends that his attorney failed to advise the court that "the unproven prior . . . [convictions] were consolidated and only counted as one . . . ." (*Id.* at 15.) Last, he argues that his attorney did not object to the fact that his sentence was

---

[2] This claim is incorrect. The enhancement increased the maximum possible term of imprisonment, which did affect his offense level pursuant to the career offender provision of the Sentencing Guidelines. *See* U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(b) (2009). However, the application of the career offender provision, not the § 851 enhancement, caused him to lose eligibility for the role reduction adjustment.

much more severe than that of his co-conspirator.[3] (*Id.*)

Most of Sauceda's claims regarding sentencing stem from the application of the career offender provision, or U.S. SENTENCING GUIDELINES MANUAL § 4B1.1 (2009). A career offender is defined as a person with at least two prior felony convictions of a controlled substance offense. *Id.* A controlled substance offense is defined in relevant part as a violation of state law involving the distribution of or possession with intent to distribute a controlled substance that is punishable by imprisonment for a term of more than one year. U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(b) (2009).

Sauceda qualifies as a career offender under this provision, notwithstanding his objection to the contrary, because he has two prior felony convictions for controlled substance offenses. On October 30, 2000, charges were filed against him in the Twelfth Judicial District Court for possession with intent to distribute marijuana in violation of N.M. STAT. ANN. § 30-31-22(A) (1990). *State v. Sauceda*, D-1215-CR-2000000629 (N.M. Dist. Ct., filed Oct. 30, 2000). He pled no contest to this charge on December 20, 2002 and was sentenced on January 2, 2003 before Judge Frank K. Wilson. *Id.*; *see also* Doc. 72 at 10. Because this offense is punishable by more than one year of imprisonment and involves the intent to distribute a controlled substance, this constitutes one qualifying controlled substance offense. On May 29, 2001, Sauceda was charged in the Fifth Judicial District Court with trafficking a controlled substance (cocaine) in violation of N.M. STAT. ANN. §

---

[3] Sauceda also asserts that his prior felonies did not qualify for career offender purposes because he did not receive criminal history points under U.S. SENTENCING GUIDELINES MANUAL § 4A1.1(a), (b), or (c) (2009). (Doc. 1 at 14.) However, this argument has no foundation in the law. All that is relevant to the career offender determination is whether there are prior felony convictions and whether the offenses involved controlled substances or violence. *See* U.S. SENTENCING GUIDELINES MANUAL §§ 4B1.1 & 4B1.2 (2009). The number of criminal history points received for the felonies is irrelevant to the career offender determination. *See id.*

30-31-20 (2009). *State of New Mexico v. Sauseda* [sic], D-504-CR-200100268 (N.M. Dist. Ct., filed Aug. 7, 2001). He pled no contest to this charge on May 6, 2002 and was sentenced later that month before Judge Alvin F. Jones. *Id.*; *see also* Doc. 72 at 11.This offense was also punishable by more than one year of imprisonment and involves the intent to distribute a controlled substance, so it is the second qualifying controlled substance offense. Clearly, these charges, which were filed in separate courts and pled and sentenced before different judges on different dates, were not consolidated. There is no merit to Sauceda's assertion that the career offender provision did not apply, and Mr. Wright had no basis on which to object to the application of this provision.

    Mr. Wright's performance at the sentencing phase could not be objectively unreasonable because the guideline range was computed correctly by the PSR and the Court, so any objection thereto would have been baseless and frivolous. Sauceda's assertion that his offense level should have been twenty-two is incorrect; he assumes that he should have received all stipulated offense level reductions, for a total reduction of six levels, and only eight levels of enhancement for being a career offender. As explained in the preceding paragraph, Sauceda has two prior felony drug convictions and clearly qualifies as a career offender. Accordingly, as determined by the PSR and the sentencing court, Sauceda's adjusted offense level was thirty-four and he was only eligible for a three level reduction for acceptance of responsibility pursuant to U.S. SENTENCING GUIDELINES MANUAL §§ 3E1.1(a) and (b) and 4B1.1(b) (2009). Based on the criminal history category of VI that is prescribed by the career offender provision, *see* U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(b) (2009), the applicable guideline range was 188 to 235 months of imprisonment. U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A. Since the computation was correct, Mr. Wright's

performance was objectively reasonable.[4]

In addition, once Mr. Wright determined that Sauceda was ineligible for the stipulated adjustment for his role in the offense, he filed a motion for a downward variance. (Doc. 44.) Had Judge Conway granted the motion, Sauceda would have received an additional adjustment of three levels, for a total offense level reduction of six levels. The resulting guideline range would still have been 140 to 175 months. *See* U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A. Though the Court denied the motion, the fact that it was filed and argued during the hearing further evinces the reasonableness of Mr. Wright's performance.

Finally, regarding the disparity between Sauceda's sentence and that of his co-conspirator, no claim of ineffective assistance of counsel is available. Of course, unwarranted disparity in sentencing among similarly situated offenders across the nation is a concern. One goal of the Sentencing Guidelines was to reduce unjustified sentencing disparities for similar defendants who committed similar conduct. *Koon v. United States*, 518 U.S. 81, 113 (1996). Courts often take the sentences of co-conspirators into consideration when crafting an appropriate sentence for a defendant. *See, e.g.*, *United States v. Gallegos*, 129 F.3d 1140, 1143 (10th Cir. 1997) (quoting 18 U.S.C. § 3553(a)(6)) ("[T]he district court should consider . . . 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]'").

In this case, though, even assuming that Sauceda and Mendoza were similarly situated,[5]

---

[4] In an abundance of caution, I note that an attorney's "miscalculation or erroneous sentence estimation . . . is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993) (citations omitted).

[5] Indeed, as the Government discusses, Sauceda and Mendoza were not similarly situated defendants, largely due to vast differences in their prior criminal histories. (Doc. 70 at 6.)

10

Mendoza was not sentenced until January 20, 2011. *See United States v. Mendoza*, 2:10-cr-01557-JAP-1, Doc. 52 (D.N.M. Dec. 21, 2010). Mendoza's sentence, then, was imposed three months after Sauceda's and was unknown at the time of Sauceda's sentencing hearing. Thus, it would have been impossible for Mr. Wright to bring Mendoza's sentence to the Court's attention. Ineffective assistance of counsel cannot be premised on an impossibility.

Sauceda has failed to demonstrate that Mr. Wright's performance was objectively unreasonable at the sentencing phase. An evidentiary hearing is not warranted, and I recommend that the Court deny relief to Sauceda on this claim.

### RECOMMENDATION

Because Sauceda has not demonstrated that Mr. Wright's performance was prejudicial at the plea phases or objectively unreasonable at sentencing, I recommend that his Motion under 28 U.S.C. § 2255 be denied. Because Sauceda has not made a substantial showing of the denial of a constitutional right, I further recommend that a Certificate of Appealability not be issued. *See* 28 U.S.C. § 2253(c).

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

                                                  William P. Lynch
                                                  United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.